UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X



UNITED STATES OF AMERICA                  :

    - v. -                               :

                        :

DOMINICK DEVITO,                          :    **INDICTMENT**
ROBERT DIDONATO,                          :
JOHN LISCIO, and                          :    S4 06 Cr. 1089 (BSJ)
LOUIS CORDASCO, Jr.,                      :

             Defendants.         :

- - - - - - - - - - - - - - - - - - - X

## COUNT ONE

### (CONSPIRACY TO COMMIT BANK FRAUD)

    The Grand Jury charges:

### BACKGROUND

    1.    At all times relevant to this Indictment, DOMINICK DEVITO, the defendant, was the leader of a fraudulent real estate investment scheme which had as its primary objective the purchase of multi-million dollar residential properties in Westchester County with loans obtained through the submission of false and misleading information to banks and other lenders.  Among other things, DEVITO identified properties for sale, orchestrated the purchase of the properties and performed construction work at the properties.

    2.    At all times relevant to this Indictment, ROBERT DIDONATO, the defendant, was a residential real estate broker who worked for a real estate company in Rye, New York.  At various

times relevant to this Indictment, DIDONATO acted as a real estate broker for DEVITO and other co-conspirators in their purchase of the properties that were the subject of the scheme.

## SCHEME TO DEFRAUD

3.    As set forth more fully below, from in or about January 2002 through in or about November 2004, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, engaged in an illegal scheme to purchase and re-finance several multi-million dollar residential properties with mortgage and home equity loans obtained through the submission of false and misleading information to banks and other lenders.  Many of the loans were equal to or in excess of one hundred percent of a property's actual sale price, so that the defendants and their co-conspirators did not have to put any of their own money at risk in the transaction.  The properties in the scheme included 28 Brae Burn Drive, Purchase, New York ("28 Brae Burn"), 29 Pinehurst Drive, Purchase, New York ("29 Pinehurst"), 116 Lakeshore Drive, Eastchester, New York ("116 Lakeshore Drive"), 9 Oak Valley Lane, Purchase, New York, ("9 Oak Valley"), 4350 Purchase Street, Purchase, New York ("4350 Purchase"), 3801 Purchase Street, Purchase, New York ("3801 Purchase"), 4 Ridgeland Manor, Rye, New York ("4 Ridgeland") and 28 Scott Circle, Purchase, New York ("28 Scott Circle").

4.    As part of the scheme to defraud, the defendants

2

submitted and caused to be submitted to various federally-insured banks certain documents, including loan applications, contracts of sale, deeds, real estate transfer documents, and title reports, among others, which contained materially false or misleading information about the credit-worthiness of the borrower, the chain of title to the property, and the sale price of the home, among other things, for the purpose of inducing banks to make loans that they otherwise would not have funded.

5.    As part of the scheme to defraud, DOMINICK DEVITO, and ROBERT DIDONATO, the defendants, identified properties for sale in various communities in Westchester County, including Purchase, New York.

6.    As a further part of the scheme to defraud, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, sought and obtained mortgage and home equity loans, often in the names of other co-conspirators not named herein, to purchase properties by falsely representing to various banks the property's sale price and, by extension, its actual market value.  The defendants submitted and caused to be submitted to various banks certain documents, such as loan applications and contracts of sale, that fraudulently reflected an artificially high sale price for a particular property.  In so doing, the defendants induced banks to lend more money, pursuant to the banks' internal loan-to-value lending guidelines, than the banks would otherwise have loaned.

In some cases, including 29 Pinehurst, 116 Lakeshore, 4 Ridgeland and 28 Scott Circle, the defendants obtained loans for amounts close to, or in excess of, one hundred percent of a property's actual market value.

7.    As part of the scheme to defraud, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, falsely represented the sale price of a property to the banks in various ways.  In some cases, including 29 Pinehurst, 4 Ridgeland, 4350 Purchase Street and 28 Scott Circle, the defendants orchestrated the "sale" or "flip" of the property from the seller to a first buyer, and then, in turn, to a second buyer, within a matter of weeks.  The "sale" to the first buyer reflected, on paper, the agreed-upon sale price of the property with the seller.  The "sale" from the first buyer to the second buyer reflected, on paper, the fraudulently inflated sale price of the property.  The documents submitted to the banks in these cases falsely represented, among other things, the chain of title to the property, in order to disguise from the banks the flip of the property through the first buyer and the attendant increase in the property's sale price.

8.    As a further part of the scheme to defraud, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, sought and obtained mortgage and home equity loans to purchase properties by falsifying certain personal and financial information about the borrower that was material to the banks in their lending

4

decisions.  Specifically, the defendants submitted and caused to be submitted to various banks documents, including the loan application form, that contained false and misleading information concerning the borrower's income, assets, and existing debt, as well as the borrower's intent to reside in the property as a primary residence, when, in fact, the properties were typically purchased for investment purposes.

9.  As a further part of the scheme to defraud, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, sought and obtained mortgage and home equity loans to purchase properties by falsely representing to various banks that the borrower had equity in the property when, in fact, the borrower purchased the property with one hundred percent financing and none of his own money at risk.

10.  As a further part of the scheme to defraud, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, created and caused to be created documents intended to "paper over" the fraudulent nature of the transactions.  These documents purported to forgive monies owed by the borrower to the seller, as a means of justifying the fraudulently inflated sale price of the property.

11.  As a further part of the scheme to defraud, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, "cashed out" on certain properties by taking additional private loans against

the already fraudulently-inflated sale price of the properties. The proceeds of these loans, which were never repaid in full, were deposited in a bank account used for the benefit of DEVITO, among others.

12.  As a result of the defendants' scheme to defraud, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, obtained millions of dollars in loan proceeds, enabling them to control certain properties that they otherwise would not have been able to purchase and finance.  In addition, the defendants earned money from fees and commissions on the sale or re-financing of the properties.  The banks, on the other hand, lost millions of dollars when the defendants and their co-conspirators defaulted on mortgage payments and caused several of the properties to go into foreclosure.

**THE CONSPIRACY**

13.  From at least in or about January 2002 through in or about November 2004, in the Southern District of New York and elsewhere, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Section 1344 of Title 18, United States Code.

14.  It was a part and an object of the conspiracy that DOMINICK DEVITO and ROBERT DIDONATO, the defendants, and others

known and unknown, unlawfully, willfully, and knowingly would and did execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, including but not limited to First National Bank of Arizona, Washington Mutual Bank, Chevy Chase Bank, GreenPoint Savings Bank and Lehman Brothers Bank, FSB, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

**Overt Acts**

15.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    In or about April 2002, ROBERT DIDONATO, the defendant, offered to purchase 29 Pinehurst on behalf of DOMINICK DEVITO, the defendant, for its full asking price of $895,000 before the property was listed on the market.

b.    On or about July 22, 2002, ROBERT DIDONATO, the defendant, caused a false and misleading statement to be made to Chevy Chase Bank regarding, among other things, the sale price

and the chain of title to 29 Pinehurst in connection with a loan application for a mortgage to purchase 29 Pinehurst.

c.    On or about July 24, 2002, DOMINICK DEVITO, the defendant, attended a closing on behalf of the borrower for 28 Brae Burn Drive, at which documents were submitted to First National Bank of Arizona that contained false and misleading information about, among other things, the borrower's intent to live in the property as a primary residence, and the borrower's equity in the property.

d.    In or about August 2002, DOMINICK DEVITO, the defendant, moved into 28 Brae Burn Drive as his primary residence.

e.    On or about August 2, 2002, ROBERT DIDONATO, the defendant, attended a real estate closing for 29 Pinehurst Drive at which documents were submitted to Chevy Chase Bank that contained false and misleading information about, among other things, the sale price of the property.

f.    On or about September 29, 2002, DOMINICK DEVITO caused approximately $17,000 of loan proceeds related to 28 Brae Burn to be wired to a bank account controlled by DEVITO.

g.    In or about January 2003, ROBERT DIDONATO, the defendant, moved into 29 Pinehurst as his primary residence.

h.    In or about January 2003, DOMINICK DEVITO, the defendant, caused an appraisal to be created with an inflated

8

value for the property located at 3801 Purchase Street.

i.   On or about July 1, 2003, DOMINICK DEVITO, the defendant, attended a real estate closing for 4350 Purchase Street, at which documents were submitted to Chevy Chase Bank that contained false and misleading information about, among other things, the sale price of the property.

j.   In or about November 2003, ROBERT DIDONATO, the defendant, submitted and caused to be submitted to Washington Mutual Bank loan application documents which contained false and misleading statements about, among other things, the borrower's income in connection with the borrower's purchase of a property located at 9 Oak Valley.

k.   In or about June 2004, ROBERT DIDONATO, the defendant, prepared a loan application for the purpose of purchasing 29 Pinehurst which contained false statements about the amount of a down payment he had made on the property.

(Title 18, United States Code, Section 1349).

### COUNT TWO

(BANK FRAUD RE: 28 BRAE BURN)

The Grand Jury further charges:

16.   In or about July 2002, in the Southern District of New York and elsewhere, DOMINICK DEVITO, the defendant, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial

institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, DEVITO submitted and caused to be submitted to First National Bank of Arizona false information about, among other things, the amount of the borrower's down payment on the property and the borrower's intent to reside in the property, in order to procure a home mortgage loan in the amount of $1,500,000 for the purchase of 28 Brae Burn.

(Title 18, United States Code, Sections 1344 and 2.)

## Count Three

(BANK FRAUD RE: 28 BRAE BURN)

The Grand Jury further charges:

17.   In or about September 2002, in the Southern District of New York and elsewhere, DOMINICK DEVITO, the defendant, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and

10

promises, to wit, DEVITO submitted and caused to be submitted to Washington Mutual Bank false information about, among other things, the amount of the borrower's equity in the property and the borrower's intent to reside in the property, in order to procure a home mortgage loan in the amount of $1,700,000 for the refinancing of 28 Brae Burn.

(Title 18, United States Code, Sections 1344 and 2.)

### Count Four

(Bank Fraud re: 29 Pinehurst)

The Grand Jury further charges:

18.    In or about August 2002, in the Southern District of New York and elsewhere, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, DEVITO and DIDONATO submitted and caused to be submitted to Chevy Chase Bank false information about, among other things, the amount of the sale price of the property, the borrower's down payment on the property, the chain of title to the property and the borrower's intent to reside in the property, in order to procure a home mortgage loan in the amount of

11

$900,000 for the purchase of 29 Pinehurst.

(Title 18, United States Code, Sections 1344 and 2.)

## Count Five

(Bank Fraud re: 116 Lakeshore Drive)

The Grand Jury further charges:

19.  In or about October 2002, in the Southern District of New York and elsewhere, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, DEVITO and DIDONATO submitted and caused to be submitted to Lehman Brothers Bank, FSB false information about, among other things, the amount of the sale price of the property, the borrower's down payment on the property, and the borrower's intent to reside in the property, in order to procure a home mortgage loan in the amount of $1,000,000 for the purchase of 116 Lakeshore Drive.

(Title 18, United States Code, Sections 1344 and 2.)

## Count Six

(Bank Fraud re: 116 Lakeshore Drive)

The Grand Jury further charges:

12

20.   In or about March 2003, in the Southern District of New York and elsewhere, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, DEVITO and DIDONATO submitted and caused to be submitted to GreenPoint Mortgage Funding, Inc., false information about, among other things, the amount of the sale price of the property, and the borrower's intent to reside in the property in order to procure a home equity loan from GreenPoint Savings Bank, whose deposits were federally insured, in the amount of $200,000 secured by 116 Lakeshore Drive.

(Title 18, United States Code, Sections 1344 and 2.)

## Count Seven

(Bank Fraud re: 4 Ridgeland)

The Grand Jury further charges:

21.   In or about October 2002, in the Southern District of New York and elsewhere, ROBERT DIDONATO, the defendant, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the

Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, DIDONATO submitted and caused to be submitted to Chevy Chase Bank false information about, among other things, the amount of the sale price of the property, the borrower's down payment on the property and the chain of title to the property in order to procure a home mortgage loan in the amount of $375,000 for the purchase of 4 Ridgeland.

(Title 18, United States Code, Sections 1344 and 2.)

### Count Eight

(Bank Fraud re: 3801 Purchase Street)

The Grand Jury further charges:

22.   In or about January 2003, in the Southern District of New York and elsewhere, DOMINICK DEVITO, the defendant, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, DEVITO submitted and caused to be submitted to Washington Mutual Bank false information about, among other

14

things, the value of the property, and the borrower's income and intent to reside in the property in order to procure a home mortgage loan in the amount of $3,640,000 for the refinancing of 3801 Purchase Street.

(Title 18, United States Code, Sections 1344 and 2.)

### Count Nine

(Bank Fraud re: 4350 Purchase Street)

The Grand Jury further charges:

23.   In or about July 2003, in the Southern District of New York and elsewhere, DOMINICK DEVITO, the defendant, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, DEVITO submitted and caused to be submitted to Chevy Chase Bank false information about, among other things, the amount of the sale price of the property, the borrower's down payment on the property and the chain of title to the property in order to procure a home mortgage loan in the amount of $2,405,000 for the purchase of 4350 Purchase Street.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT TEN

(Bank Fraud re: 4350 Purchase Street)

The Grand Jury further charges:

24.  In or about July 2003, in the Southern District of New York and elsewhere, DOMINICK DEVITO, the defendant, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, DEVITO submitted and caused to be submitted to GreenPoint Mortgage Funding, Inc. false information about, among other things, the amount of the sale price of the property, the borrower's down payment on the property and the chain of title to the property in order to procure a home equity loan from GreenPoint Savings Bank, whose deposits were federally insured, in the amount of $380,000 for the purchase of 4350 Purchase Street.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT ELEVEN

(Bank Fraud re: 28 Scott Circle)

The Grand Jury further charges:

25.  In or about August 2003, in the Southern District of New York and elsewhere, DOMINICK DEVITO, the defendant,

unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, DEVITO submitted and caused to be submitted to GreenPoint Mortgage Funding, Inc. false information about, among other things, the amount of the sale price of the property, the borrower's down payment on the property, the chain of title to the property and the borrower's income in order to procure a home mortgage loan from GreenPoint Savings Bank, whose deposits were federally insured, in the amount of $1,085,000 for the purchase of 28 Scott Circle.

(Title 18, United States Code, Sections 1344 and 2.)

### COUNT TWELVE

(Bank Fraud re: 9 Oak Valley)

The Grand Jury further charges:

26.  In or about November 2003, in the Southern District of New York and elsewhere, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, unlawfully, willfully, and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other

property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, DEVITO and DIDONATO submitted and caused to be submitted to Washington Mutual Bank false information about, among other things, the amount of the sale price of the property, the borrower's down payment on the property, and the borrower's income and intent to reside in the property, in order to procure a home mortgage loan in the amount of $2,760,000 for the purchase of 9 Oak Valley.

(Title 18, United States Code, Sections 1344 and 2.)

## **COUNT THIRTEEN**

(OBSTRUCTION OF JUSTICE)

27.   In or about August 2003, in the Southern District of New York, the District of New York, and elsewhere, DOMINICK DEVITO, the defendant, unlawfully, willfully and knowingly did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct and impede, the due administration of justice, to wit, DEVITO submitted an affidavit containing false and misleading information to the United States Probation Office regarding the value of DEVITO's assets and his personal net worth following DEVITO's sale of property located at 3747 Purchase Street, Purchase, New York, in connection with DEVITO's sentencing in the United States District Court for the Southern District of New York following DEVITO's 2002 criminal conviction in United States v. Pasquale Parello, et al., 01 Cr. 1120 (RLC),

18

for violations of 18 U.S.C. §§ 1962(d) and 1344.

(Title 18, United States Code, Sections 1503 and 2).

### COUNT FOURTEEN

(CONSPIRACY TO COMMIT MAIL FRAUD)

28.  The allegations contained in paragraphs one through three of this Indictment are repeated and re-alleged as if fully set forth herein.

29.  At all times relevant to this Indictment, JOHN LISCIO, the defendant, owned Liscio Insurance Agency, Inc., in Tuckahoe, New York.  LISCIO was a licensed insurance agent who sold insurance products to, among other people, DEVITO.

30.  At all times relevant to this Indictment, LOUIS CORDASCO, JR., the defendant, worked for Crystal Restoration Enterprises, Inc., in Port Chester, New York, a company that specializes in emergency clean-up services, including in residential homes, for, among other things, water damage from a broken pipe.  At various times relevant to this Indictment, CORDASCO was responsible for, among other things, performing emergency clean-up services for 28 Brae Burn and 28 Scott Circle.

### Scheme To Defraud

31.  As set forth more fully below, from in or about January 2003 through in or about February 2005, DOMINICK DEVITO, ROBERT DIDONATO, JOHN LISCIO, and LOUIS CORDASCO, JR., the defendants, engaged in a scheme to defraud insurance companies by submitting, and causing to be submitted, insurance claims and supporting documents for water damage to homes and/or their

19

contents caused by broken pipes, which claims contained false and misleading information about, among other things, the value of the contents of the home, for the purpose of obtaining insurance proceeds to which the defendants and their co-conspirators were not otherwise entitled.

32.  As part of the scheme to defraud, and at DEVITO's direction, LISCIO sold various insurance policies to the homeowners of 28 Brae Burn, 4350 Purchase, 28 Scott Circle, and 3801 Purchase, among other properties.  In addition, LISCIO, the defendant, sold an insurance policy to DEVITO for DEVITO'S personal property while DEVITO lived at 28 Brae Burn.

33.  As a further part of the scheme to defraud, DOMINICK DEVITO, LOUIS CORDASCO, JR., JOHN LISCIO, and ROBERT DIDONATO, the defendants, submitted and caused to be submitted insurance claims for water damage from a broken pipe at 28 Brae Burn, which claims the defendants knew contained false and misleading statements.

34.  As a further part of the scheme to defraud, LOUIS CORDASCO, JR., and JOHN LISCIO, the defendants, planned to break pipes in 4350 Purchase for the purpose of submitting and causing to be submitted to an insurance company claims for payment which contained false and misleading statements.

35.  As a further part of the scheme to defraud, JOHN LISCIO, the defendant, engaged LOUIS CORDASCO, JR., the defendant, to perform emergency clean-up work at various homes

that had suffered water damage from broken pipes, including 28 Brae Burn and 28 Scott Circle.

36.  As a further part of the scheme to defraud, DOMINICK DEVITO, the defendant, caused checks representing insurance proceeds from a flood at 28 Brae Burn to be deposited into a bank account used for the benefit of DEVITO, among others.

**THE CONSPIRACY**

37.  From at least in or about January 2003, up to and including in or about February 2005, in the Southern District of New York and elsewhere, DOMINICK DEVITO, ROBERT DIDONATO, JOHN LISCIO, and LOUIS CORDASCO, JR., the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Section 1341 of Title 18, United States Code.

38.  It was a part and an object of the conspiracy that DOMINICK DEVITO, ROBERT DIDONATO, JOHN LISCIO, and LOUIS CORDASCO, JR., the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting so to do, unlawfully, willfully and knowingly would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited a matter and

thirg to be sent and delivered by a private and commercial interstate carrier, and would and did take and receive therefrom, such matters and things, and would and did knowingly cause to be delivered by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

**OVERT ACTS**

39.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On or about January 23, 2003, JOHN LISCIO, the defendant, on behalf of DEVITO, the defendant, and the homeowner, reported to an insurance company that 28 Brae Burn had suffered water damage from a broken pipe.

b.    On or about February 1, 2003, ROBERT DIDONATO, the defendant, entered into a sham residential real estate lease with DEVITO for $12,500 a month, for the purpose of assisting DEVITO in obtaining insurance proceeds from the pipe break at 28 Brae Burn.

c.    On or about February 4, 2003, LOUIS CORDASCO, the defendant, submitted and caused to be submitted to an insurance company a fraudulently inflated appraisal for certain

22

of DEVITO's personal possessions as part of DEVITO's insurance claim from the pipe break at 28 Brae Burn.

      d.   On or about February 8, 2003, DOMINICK DEVITO, the defendant, submitted and caused to be submitted to an insurance company false and misleading information concerning the value of DEVITO's personal items, including rugs and art work, which were purportedly damaged by the pipe break at 28 Brae Burn.

      e.   On or about April 24, 2004, an insurance company sent, via United States Mail, checks representing the proceeds of the insurance claim at 28 Brae Burn to an office in Westchester County.

      f.   On or about June 25, 2004, ROBERT DIDONATO, the defendant, gave false and misleading sworn testimony regarding the rent payments he received from DEVITO as a result of the pipe break at 28 Brae Burn.

      g.   On or about January 29, 2005, JOHN LISCIO, the defendant, had a meeting with the owner of 4350 Purchase at LISCIO's office in Tuckahoe, New York.  During the course of the meeting, LISCIO described how LISCIO, LOUIS CORDASCO, JR., and others intended to break a pipe at 4350 Purchase for the purpose of fraudulently obtaining insurance proceeds.

      h.   On or about February 2, 2005, JOHN LISCIO, LOUIS CORDASCO, JR. and the owner of 4350 Purchase met at 4350 Purchase and discussed how to cause water damage to the home.

i.   On or about February 8, 2005, LOUIS CORDASCO, JR., the defendant, brought a person to 4350 Purchase for the purpose of identifying which pipe to break in the house.

(Title 18, United States Code, Section 1349.)

## COUNT FIFTEEN

(MAIL FRAUD)

The Grand Jury further charges:

40.   From in or about January 2003 up to and including in or about June 2004, in the Southern District of New York and elsewhere, DOMINICK DEVITO, ROBERT DIDONATO, JOHN LISCIO, and LOUIS CORDASCO, JR., the defendants, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, to wit, a scheme to obtain hundreds of thousands of dollars in insurance proceeds from water damage to 28 Brae Burn by, among other things, submitting and causing to be submitted to an insurance company documents containing false representations and material omissions regarding, among other things, the value of certain items of personal property, for the purpose of executing such scheme and artifice and attempting so to do, unlawfully, willfully and knowingly would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did take and receive therefrom, such matters and things, and would and did knowingly cause to be delivered by mail according to the direction thereon, and at the place at which it

was directed to be delivered by the person to whom it was addressed, such matters and things, to wit, DEVITO, DIDONATO, LISCIO, and CORDASCO, the defendants, and others known and unknown, caused checks, representing the proceeds of the insurance fraud, to be mailed, on or about April 17, 2003 and on or about April 24, 2003, by an insurance company via the Postal Service, from North Carolina to an office in Westchester County, New York.

(Title 18, United States Code, Section 1341).

## FORFEITURE ALLEGATION

(As to Counts One Through Twelve)

41. As a result of committing the bank fraud offenses alleged in Counts One through Twelve of this Indictment, DOMINICK DEVITO and ROBERT DIDONATO, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 982, any property constituting or derived from proceeds obtained directly or indirectly as a result of the bank fraud offense alleged in Count One of this Indictment, including but not limited to the following: at least $7,500,000 in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Count One of this Indictment, for which the defendants are jointly and severally liable.

## Substitute Assets Provision

42. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due
      diligence;

b.    has been transferred or sold to, or
      deposited with, a third party;

c.    has been placed beyond the
      jurisdiction of the court;

d.    has been substantially diminished
      in value; or

e.    has been commingled with other
      property which cannot be divided
      without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C.
§ 982(b), to seek forfeiture of any other property of the
defendants up to the value of the forfeitable property.

(Title 18, United States Code, Sections 982 and 1349.)

**FORFEITURE ALLEGATION**

(As to Counts Fourteen and Fifteen)

43.  As a result of committing the mail fraud offenses
alleged in Counts Fourteen and Fifteen of this Indictment,
DOMINICK DEVITO, ROBERT DIDONATO, JOHN LISCIO and LOUIS CORDASCO,
JR., the defendants, shall forfeit to the United States, pursuant
to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C § 2461, all property,
real and personal, that constitutes or is derived, directly and
indirectly, from proceeds traceable to the commission of the mail
fraud offenses alleged in Counts Fourteen and Fifteen of this
Indictment, including but not limited to the following: at least

$700,000 in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts Fourteen and Fifteen of this Indictment, for which the defendants are jointly and severally liable.

### Substitute Assets Provision

44.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

> a.   cannot be located upon the exercise of due diligence;
>
> b.   has been transferred or sold to, or deposited with, a third party;
>
> c.   has been placed beyond the jurisdiction of the court;

    d.   has been substantially diminished in value;
or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

  (Title 18, United States Code, Sections 981(a)(1)(C), 1341 and 1349; Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
MICHAEL J. GARCIA
United States Attorney

28